No. 12-35287

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIVE VILLAGE OF POINT HOPE, INUPIAT COMMUNITY OF THE ARCTIC SLOPE, ALASKA WILDERNESS LEAGUE, CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, NATIONAL AUDUBON SOCIETY, NATURAL RESOURCES DEFENSE COUNCIL, NORTHERN ALASKA ENVIRONMENTAL CENTER, OCEANA, PACIFIC ENVIRONMENT, RESISTING DESTRUCTION ON INDIGENOUS LANDS (REDOIL), SIERRA CLUB, THE WILDERNESS SOCIETY, and WORLD WILDLIFE FUND,

*Plaintiffs-Appellants*,

v.

KENNETH L. SALAZAR, Secretary of the Interior; TOMMY BEAUDREAU, Director of Bureau of Ocean Energy Management; and BUREAU OF OCEAN ENERGY MANAGEMENT,

*Defendants-Appellees,*

SHELL GULF OF MEXICO INC., CONOCOPHILLIPS COMPANY, STATE OF ALASKA, and STATOIL USA E&P, INC.,

*Intervenor Defendants-Appellees*

On Appeal from the United States District Court for the District of Alaska
_____

## APPELLANTS' REPLY BRIEF
_____

Erik Grafe
EARTHJUSTICE
441 W 5th Avenue, Suite 301
Anchorage, AK 99501
T: 907-792-7102

Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907-586-2751

Date: October 1, 2012

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

I.    BOEM ARBITRARILY CONCLUDED THAT NONE OF THE
      MISSING INFORMATION IS ESSENTIAL....................................................1

      A.    Appellees' attempts to defend BOEM's "not essential"
            conclusion fail to address the agency's own controlling analysis
            in the EIS and the nature of the lease sale decision ............................2

            1.    The defense that information suffices fails to address
                  BOEM's conclusions and analysis in the EIS ..........................5

                  a.    BOEM did not in the SEIS overturn its EIS
                        conclusions about the extent of missing
                        information and the resulting limits in its ability to
                        analyze the lease sale ........................................................6

                  b.    Federal Appellees' argument that BOEM had
                        enough information to define and compare
                        alternatives fails because it ignores the EIS ...................8

                  c.    Company Appellees' argument that information
                        suffices does not demonstrate the reasonableness
                        of BOEM's "not essential" conclusion because it
                        too ignores the problem presented by the EIS's
                        conclusions ..................................................................12

            2.    OCSLA's staged decision-making process does not
                  justify proceeding in the absence of the information
                  missing here .......................................................................14

II.   BOEM BASED THE SCENARIO THAT UNDERLIES ITS
      ASSESSMENT OF THE LEASE SALE'S EFFECTS ON AN
      ARBITRARY ASSUMPTION....................................................................17

III.  THE COURT SHOULD VACATE THE AGENCY DECISION, OR
      IN THE ALTERNATIVE, ENJOIN ACTIVITIES UNDER THE
      LEASES, AND REMAND FOR COMPLIANCE WITH NEPA.................21

# TABLE OF AUTHORITIES

## CASES

*Amber Res. Co. v. U.S.*,
538 F.3d 1358 (Fed. Cir. 2008) ...................................................................27

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987)..............................................................................25, 26

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
631 F.3d 1072 (9th Cir. 2011) ...................................................................22

*California Communities Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012) .....................................................................22

*Edwardsen v. U.S. Dep't of Interior*,
268 F.3d 781 (9th Cir. 2001) .....................................................................17

*Idaho Conservation League v. Mumma*,
956 F.2d 1508 (9th Cir. 1992) .....................................................................3

*Idaho Farm Bureau v. Babbit*,
58 F.3d 1392 (9th Cir. 1995) .....................................................................22

*Idaho Sporting Congress Inc. v. Alexander*,
222 F.3d 562 (9th Cir. 2000) .....................................................................27

*In re Core Communications, Inc.*,
531 F.3d 849 (D.C. Cir. 2008).....................................................................24

*Mass. v. Watt*,
716 F.2d 946 (1st Cir. 1983)........................................................................26

*MCI Telecommunications Corp. v. FCC*,
59 F.3d 1407 (D.C. Cir. 1995)......................................................................23

*Monsanto Co. v. Geertson Seed Farms*,
130 S. Ct. 2743 (2010).................................................................................22

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.*
*Auto. Ins. Co.*,
463 U.S. 29 (1983)........................................................................................18

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*,
    177 F.3d 800 (9th Cir. 1999) ..................................................................3

*N. Alaska Envtl. Ctr. v. Kempthorne*,
    457 F.3d 969 (9th Cir. 2006) ..................................................3, 16, 20

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.*,
    668 F.3d 1067 (9th Cir. 2011) ...............................................................17

*Nat'l Parks & Conservation Ass'n v. Babbitt*,
    241 F.3d 722 (9th Cir. 2001), ), *abrogated on other grounds by Winter v.
    Natural Res. Def. Council*, 555 U.S. 7 (2008).......................................27

*Native Ecosystems Council v. U.S. Forest Serv.*,
    418 F.3d 953 (9th Cir. 2005) ..................................................................3

*Natural Res. Def. Council v. Houston*,
    146 F.3d 1118 (9th Cir. 1998) ..............................................................25

*North Slope Borough v. Andrus*,
    642 F.2d 589 (D.C. Cir. 1980)..............................................................15

*Pit River Tribe v. U.S. Forest Serv.*,
    615 F.3d. 1069 (9th Cir. 2010) .............................................................22

*Radio-Television News Dirs. Ass'n v. FCC,*
    184 F.3d 872 (D.C. Cir. 1999)..............................................................24

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ................................................................27

*S. Or. Citizens Against Toxic Sprays, Inc. v. Clark*,
    720 F.2d 1477 (9th Cir. 1983) ..............................................................17

*Se. Alaska Conservation Council v. Fed. Highway Admin.*,
    649 F.3d 1050 (9th Cir. 2011) ................................................................3

*Sec'y of the Interior v. Cal.*,
    464 U.S. 312 (1984)..............................................................................23

*Sierra Forest Legacy v. Sherman*,
    646 F.3d 1161 (9th Cir. 2011) .......................................................3, 21, 22

*Suffolk County v. Sec'y of Interior*,
562 F.2d 1368 (2d Cir. 1977) ................................................................15

*Tribal Vill. of Akutan v. Hodel*,
859 F.2d 662 (9th Cir. 1988) ................................................................26

*Tribal Vill. of Akutan v. Hodel*,
869 F.2d 1185 (9th Cir. 1988) ........................................15, 16, 18, 20

*Vill. of False Pass v. Clark*,
733 F.2d 605 (9th Cir. 1984) .............................................14, 15, 16

*Woods Petroleum Corp. v. U.S. Dept. of Interior*,
18 F.3d 854 (10th Cir. 1994), *adhered to on reh'g*, 47 F.3d 1032 (10th
Cir. 1995) ...............................................................................................23

## STATUTES

43 U.S.C. § 1332(3) .............................................................................. 23

43 U.S.C. § 1346(a)(1) .......................................................................... 23

43 U.S.C. § 1866(a) ...............................................................................16

## REGULATIONS

40 C.F.R. § 1501.4(d) ...............................................................................3

40 C.F.R. § 1502.1 ..................................................................................16

40 C.F.R. § 1502.2(g) .............................................................................25

40 C.F.R. § 1502.14 .............................................................................3, 23

iv

The two issues presented in this appeal go to the heart of BOEM's obligation under NEPA to identify and evaluate the potential impacts of proposed actions and alternatives. BOEM arbitrarily determined that not a single piece of the vast and widely acknowledged missing scientific information that constrained its analysis is essential to a choice among lease sale alternatives. BOEM compounded this error by building its entire assessment of impacts on an arbitrary assumption that oil development would occur only at the minimum possible level. Appellees' defenses in this appeal sidestep fundamental inconsistencies with the agency's own EIS analysis and merely repeat the flawed rationales offered with the decision. The two central flaws at issue here undercut NEPA's fundamental purpose to inform decision-makers. Without these errors, the agency may have prepared a very different EIS and made an entirely different lease sale decision. This decision, therefore, must be set aside and remanded to BOEM.

I.     BOEM ARBITRARILY CONCLUDED THAT NONE OF THE MISSING INFORMATION IS ESSENTIAL

BOEM's Section 1502.22 conclusion on remand—that none of the missing information detailed in the lease sale EIS is essential to a reasoned choice among alternatives—is arbitrary in light of the agency's inability in the lease sale EIS to adequately develop and compare alternatives. Appellants' Opening Brief (AB) 9-17; 31-40. Appellees' briefs, like BOEM's analysis in the SEIS itself, do not address the central flaw—BOEM's "not essential" conclusion on remand cannot be

squared with its findings and analysis in the EIS on which the agency continues to rely. Rather, they attempt to defend the conclusion in two ways that avoid the problem. First, based largely on mischaracterizations of the SEIS and ignoring the still-determinative EIS analysis, they argue there was sufficient information to make a lease sale decision. Second, they argue that the staged nature of OCSLA decision-making justifies proceeding in the face of the uncertainty identified in the EIS at the lease sale stage. These arguments fail. The first avoids the limits of the agency's analysis in the EIS. The second fails to address the actual decision being made at the lease sale stage.

A. Appellees' attempts to defend BOEM's "not essential" conclusion fail to address the agency's own controlling analysis in the EIS and the nature of the lease sale decision

Appellees either do not dispute or do not address four basic points of Appellants' argument: (1) information is "essential" for purposes of Section

2

1502.22 if it is needed to assess alternatives[1] for a particular decision, AB 34-35; (2) a lease sale is a decision about which areas to open for oil and gas activity, AB 36-37; Federal Appellees' Brief (FB) 3; (3) the decision is based on information about the biological characteristics and effects of oil and gas activity on different areas under consideration, AB 36-37; FB 23; and (4) the EIS for the lease sale concluded that missing information constrained BOEM's analysis of the biological characteristics and effects of oil activities on different areas under consideration, AB 9-12.

---

[1]     Company Appellees for the first time argue that NEPA's structure compels a conclusion that "essential" pursuant to Section 1502.22 only means information needed to *compare* alternatives and does not include information needed to *develop* alternatives, because, they argue, alternatives are developed only during the scoping process.  Company Appellees' Brief (CB) 26-27.  But scoping is simply a part of the preparation of an EIS.  *See* 40 C.F.R. § 1501.4(d) (requiring agencies to commence scoping when preparing an EIS).  Further, the obligation to develop alternatives does not end with scoping, *see* 40 C.F.R § 1502.14(a), and agencies in fact regularly develop alternatives throughout the EIS process, *see, e.g., Se. Alaska Conservation Council v. Fed. Highway Admin.*, 649 F.3d 1050, 1053-54 (9th Cir. 2011); *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 978-79 (9th Cir. 2006); *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1512 (9th Cir. 1992); *see also Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1169 (9th Cir. 2011) (holding agency violated NEPA by failing to update alternatives).

Similarly, Company Appellees fault Appellants for relying on *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953 (9th Cir. 2005), and *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800 (9th Cir. 1999), on the basis that they do not address Section 1502.22.  CB 26-27.  *See also* Federal Appellees' Brief (FB) 34 n.8.  But Appellants cite these cases because they recognize that NEPA's requirement to analyze alternatives encompasses the requirement to develop alternatives that minimize environmental impacts, Appellants' Opening Brief (AB) 35, which Appellees do not dispute, and Section 1502.22 ties to NEPA's alternatives obligation.

This dispute, therefore, narrows to a single question. In light of these undisputed points, Appellants argue BOEM could not develop or compare lease sale alternatives adequately in the EIS, severely affecting its ability to make a reasoned choice among alternatives. AB 38-40. Thus, Appellants argue, in the face of this EIS analysis, BOEM's remand conclusion that no missing information is essential to a reasoned choice among lease sale alternatives is arbitrary.[2]

Rather than directly address this central problem for BOEM's "not essential" conclusion created by the agency's own EIS analysis, Appellees attempt in two ways to avoid it. First, by mischaracterizing the SEIS and burying the EIS analysis, they argue that the SEIS demonstrates that information suffices. In this way, they attempt to rehabilitate BOEM's primary recurring rationale for its "not essential" conclusion in the SEIS—"[t]he availability of sufficient information to support sound scientific judgments and reasoned managerial decisions, even without the identified incomplete or unavailable information." II-ER-213. Second, they argue that the staged nature of OCSLA decision-making justifies proceeding in the face of the missing information at this stage, and thereby attempt to rehabilitate the other four recurring rationales—that missing information is not

---

[2] Company Appellees attempt to obscure the argument by suggesting that Appellants are challenging the adequacy of the range of alternatives considered in the EIS. CB 24-25. *Cf.* FB 17 n.3. But Appellants' argument raises a more basic point—missing information precluded the agency from developing appropriate alternatives and is therefore "essential."

essential because it can be obtained at later stages of the OCSLA process, other environmental laws will apply, the agency presumed adverse effects would occur, and it assumed alternatives would have common adverse effects. II-ER-213-14.[3]

However, these defenses—like the recurring rationales in the SEIS themselves— do not justify BOEM's "not essential" conclusion because they fail to address its conclusions and analysis in the EIS and the undisputed nature of the lease sale decision.

        1.     *The defense that information suffices fails to address BOEM's conclusions and analysis in the EIS*

Appellees' primary defense of BOEM's "not essential" conclusion is to argue, as BOEM did in the SEIS appendix, that there is sufficient information available about the Chukchi Sea for BOEM to reasonably conclude that additional

---

[3]     Appellees additionally defend BOEM's five rationales by arguing that BOEM's choice of methodology—here the use of recurring standard rationales— must be afforded deference, suggesting Appellants challenge that methodology. FB 28-30; CB 35. However, Appellants emphasize the boilerplate nature of the rationales because it underscores BOEM's inability to reconcile the inconsistency between the EIS's limited analysis of effects and alternatives due to missing information and the agency's "not essential" conclusion. AB 40-47. They do not challenge BOEM's conclusion on the basis of a methodological infirmity.

    Company Appellees also argue that BOEM went beyond the recurring rationales and provided "customized explanations" of why missing information was not essential. CB 38-40. However, the examples they cite to support this argument demonstrate the opposite—they each contain only various combinations of the five recurring excuses without any additional analysis. *See, e.g.*, CB 38 (example 1, consisting of the excuse that adverse effects are assumed, the excuse that effects are the same among all alternatives, the excuse that information suffices, a conclusion that therefore missing information is not essential).

information was not essential for the lease sale decision. *See* FB 21-26; Company Appellees' Brief (CB) 28-33. Appellees make this argument in three different ways. First, Federal Appellees mischaracterize the SEIS, arguing that BOEM in the SEIS overturned its conclusions in the EIS about the extent of missing information and how it hindered its analysis of the lease sale. Second, ignoring BOEM's missing information conclusions and alternatives analysis in the EIS, Federal Appellees argue that information sufficed because BOEM had some information about some areas to build some alternatives. Third, Company Appellees, also ignoring the EIS, attempt to demonstrate that BOEM had sufficient information by cataloguing citations to unsupported conclusions in the SEIS. As described more fully below, because they do not address the agency's own analysis in the EIS, these defenses fail to rescue BOEM's "not essential" conclusion.

        a.    BOEM did not in the SEIS overturn its EIS conclusions about the extent of missing information and the resulting limits in its ability to analyze the lease sale

Federal Appellees first attempt to argue that information suffices by asserting that "the SEIS supersedes the earlier analysis" with respect to missing information and that BOEM relies on the EIS only "where appropriate." FB 31. This assertion mischaracterizes the manner in which BOEM conducted its Section 1502.22 analysis in the SEIS.

In the SEIS, BOEM addressed three issues.  It (1) described the potential effects of natural gas development from the lease sale, (2) described the effects of a very large oil spill, and, relevant here, (3) described, in an Appendix A, that none of the missing information BOEM had identified in the EIS was essential to a reasoned choice among lease sale alternatives pursuant to Section 1502.22.  II-ER-140; I-SER-31.  BOEM did not revise the EIS's analysis of the effect of oil activity resulting from the lease sale—it continued to rely on the EIS's limited analysis of alternatives and oil activity effects in affirming the lease sale.  III-ER-413-15, 427. BOEM did not overturn the conclusions it reached in the EIS regarding the scope of information that was missing about the Chukchi Sea or the manner in which that missing information constrained its assessment of the lease sale's effects.  To the contrary, it listed each of the statements in the EIS identifying missing information that limited analysis and determined that none of the identified missing information was "essential" pursuant to Section 1502.22:

> The [Section 1502.22] analysis in Appendix A was completed to determine whether missing information identified by BOEM[] in the Sale 193 FEIS was essential or relevant under 40 CFR 1502.22 to BOEM[]'s analysis, and whether the cost of obtaining the missing information was exorbitant, or the means of doing so unknown.  As demonstrated in Appendix A, BOEM[] was not missing any information that was essential to a reasoned choice amongst the alternatives at the time of Lease Sale 193 (February 2008).

7

II-ER-308b. *See also id*. ("Additionally, it was not necessary to evaluate 'new' information (… published subsequent to the Sale 193 FEIS) in the 1502.22 analysis."); III-ER-427 (record of decision for BOEM's affirmation of the sale). These general statements carried through to the agency's specific responses to the EIS's acknowledgment of missing information in the Appendix A Section 1502.22 analysis. *See, e.g.*, II-ER-218 (noting EIS statement that "[b]ecause of the lack of data on marine mammal distributions and habitat use in offshore areas of the Chukchi Sea, it is uncertain what the level of effects would be in offshore areas," and answering the question "Is the Statement Essential to Making a Reasoned Choice?" with "NO"). Thus, contrary to Appellees' suggestion, BOEM stood by the EIS's conclusions about the extent of missing information and how the lack of data hindered the agency's analysis of the lease sale, and it continued to rely on the document's limited analysis of oil activity effects and alternatives.

> b.  Federal Appellees' argument that BOEM had enough information to define and compare alternatives fails because it ignores the EIS

Federal Appellees defend BOEM's assertion that information sufficed by arguing that because there is some information about some biologically significant areas in the Chukchi Sea, and BOEM considered this information when developing its alternatives, the agency acted reasonably in concluding that none of the missing information was essential. FB 22 (quoting and citing I-SER-90-91 from the SEIS's

8

response to comments); CB 22 (same); FB 21 (noting "extensive scientific information" about the Chukchi Sea); CB 20-21 (same). They argue that available information about the importance of coastal habitat led BOEM in the EIS to reasonably analyze alternatives that deferred leasing from variously-sized coastal areas, FB 23, and available information about areas further offshore led BOEM to reasonably conclude that it did not need to develop alternatives that deferred offshore areas, FB 23-25.

This argument fails because it does not address the limitations—due to missing information—of the alternatives analysis in the EIS. The EIS manifestly demonstrates that because BOEM was unable to analyze potential effects of oil activities or meaningfully assess the importance of different parts of the Chukchi Sea, the agency was also unable to adequately develop alternatives that would minimize the environmental effects of the lease sale decision, AB 15-17, 39-40, and was unable to compare, except at the most general level, the different effects among the lease sale alternatives it did examine, *id.* at 14-15, 38-39. Without addressing the limitations of the alternatives analysis in the EIS, the Federal Appellees' argument—like BOEM's assertion in the SEIS—that information suffices for a reasoned choice among alternatives amounts to nothing more than a conclusion at odds with the record. The undisputed fact that there is some information about the biological importance of some areas of the Chukchi Sea and

9

that BOEM relied on that information to develop coastal alternatives simply does not address Appellants' argument.

The statements Federal Appellees cite do not remedy the flaw because, again, they do not confront the limitations explained in the EIS. To show that information about nearshore areas sufficed, Federal Appellees cite the EIS's ten-page comparison of the three coastal alternatives. FB 23 (citing V-ER-940-50). But this comparison of alternatives actually highlights BOEM's limited ability to compare the effects of these alternatives in light of missing information. AB 14-15, 38-39. All the additional evidence Federal Appellees cite is from the SEIS, and none of it confronts the EIS's conclusions. They cite SEIS statements that describe species' use of coastal areas. FB 23 (citing I-SER-37, 50, 38, 40). These statements, however, simply summarize information contained in the EIS about the biology of the Chukchi Sea. *See* I-FER-3.[4] This is the same information that BOEM concluded in the EIS was insufficient to allow it to fully assess the effects of oil activities and which limited its ability to analyze alternatives. AB 9-17, 38-

---

[4] The section to which Federal Appellees cite provides the environmental baseline description for BOEM's analysis of the effects of natural gas development in the SEIS. It purports to summarize the environmental baseline discussion of the EIS, but in doing so omits all of the acknowledgments of missing information in the EIS. *Compare, e.g,* I-SER-50 (SEIS beluga summary, omitting missing information acknowledgments) *with* I-FER-6-8 (EIS discussion of belugas, with acknowledgment of missing information at bottom of I-FER-7). The section does not address whether the missing information it excludes from its summary was "essential" pursuant to Section 1502.22. That analysis is conducted in a different section of the SEIS—Appendix A.

40. It does not support a contrary conclusion that information suffices. *See, e.g.,* III-ER-370 ("you can't say information is unknown and then turn right around and say ... 'sufficient information is otherwise available to support sound scientific judgments and reasoned managerial decisions'"). One of the statements, I-SER-37, refers to a new study conducted since the 2008 lease sale that confirms the importance of nearshore habitat for bowhead whales. But BOEM did not rely on new information when it made its "not essential" conclusion. As discussed *supra* at 6-8, BOEM did not conclude in the SEIS that new information obtained since the 2008 lease sale fills the gaps identified in the original EIS; it asserted that the gaps need not be filled, because the missing information is not essential. *See also* II-ER-308b.

To show that information sufficed about areas further offshore that were not deferred in any alternatives, Federal Appellees cite a statement in the SEIS that there "is no evidence supporting the deferral of additional specific portions of the Lease Sale 193 area to benefit bowheads during their fall migration." FB 24-25 (citing I-SER-117). *See also* CB 29 n.15 (same). But this, of course, is just Appellants' point—information is missing, and this missing information precluded BOEM from developing alternatives that would minimize impacts in potentially important offshore habitat areas. AB 39-40. Federal Appellees also cite statements in the SEIS describing various species' use of offshore areas that either

11

(1) summarize information from the EIS, FB 23-25 (citing I-SER-48, 53-54, 35-36, 48-49), (2) refer to studies conducted since the 2008 lease sale, FB 24 (quoting and citing I-SER-124, 117), or (3) refer to BOEM's responses to comments, FB 24 (citing I-SER-113, 123-26), which do both and state conclusions that information sufficed. As discussed *supra* at 10-11, assertions of this type do not support the conclusion that information sufficed.

>        c.    Company Appellees' argument that information suffices does not demonstrate the reasonableness of BOEM's "not essential" conclusion because it too ignores the problem presented by the EIS's conclusions

Company Appellees seek to defend BOEM's assertion that information sufficed by providing a catalog of the many SEIS statements that merely repeat this assertion. CB 28-32. Though restating the multiple SEIS assertions may confuse and distract, it avoids the central issue—the SEIS conclusions are arbitrary in light of the EIS analysis. Even more so than Federal Appellees, Company Appellees just pretend this problem does not exist.[5]

Company Appellees point to statements from the SEIS missing information appendix, CB 29 n.15 (citing II-ER-226, 228, 233, 235), or statements that refer

---

[5] Company Appellees also mischaracterize Appellants' argument as a general assertion that, because so much information is missing about the Chukchi Sea, at least some of it must be essential. CB 20-21. But Appellants' argument is more precise—the EIS demonstrates BOEM was missing information it needed to develop and compare alternatives for the decision being made at the lease sale stage.

the reader to that appendix for an explanation of why information sufficed, *id.* at 29-33 (citing I-SER-123, 120, 113). Citing the assertions, of course, does not lend them any further support. They point to statements from BOEM's response to comments, CB 29-32, that are just bare assertions that information sufficed, that, like the statements in the appendix, directly conflict with the analysis in the EIS. *Compare, e.g.,* CB 30-31 (information suffices for walrus, citing SEIS at I-SER-122-26) *with* V-ER-968 (EIS statement that BOEM "is unaware of any delineation of walrus habitat precise enough to allow an evaluation of important walrus feeding areas"); CB 30 (information suffices for beluga, citing SEIS at I-SER-122-26) *with* V-ER-912, 942, 947 (EIS's acknowledgments that information is missing about beluga whale offshore habitat use in summer and fall, and it cannot due to missing information assess the level of effects); CB 31-32 (information suffices for fish, citing SEIS at I-SER-112, 113) *with* V-ER-877 (EIS noting there is so little data about fish that extirpation of entire species could go unnoticed). *See also* AB 9-17. The remaining statements to which the Company Appellees point are non sequiturs—statements about new information, which, as described *supra* at 11, the agency did not consider when reaching its "not essential" conclusion, *see* CB 29 (citing new bowhead studies (I-SER-116)), 30-31 (citing new walrus studies (I-SER-124)), and statements from the EIS that refer to observations that the

13

bowhead whale population may be growing, CB 29-30 (citing V-ER-814), which do not even purport to address whether information sufficed.

### 2. *OCSLA's staged decision-making process does not justify proceeding in the absence of the information missing here*

Appellees also attempt to defend BOEM's "not essential" conclusion with a legal argument that the conclusion was reasonable because OCSLA's staged decision-making structure "justifies lease sale determinations made with incomplete information regarding potential impacts of oil and gas development." FB 32.  *See also* CB 22-24; FB 19-20, 32-34.  They argue OCSLA's staged decision-making justifies the four remaining recurring rationales upon which BOEM relied in the SEIS for its "not essential" conclusion.  FB 32-38; II-ER-213-14.  As described below, however, this defense also fails because it does not address the actual decision being made at a lease sale.  *See also* AB 43-44.

In defense of the rationale that information is not essential because it can be obtained at later stages in the OCSLA process, Federal Appellees cite a number of cases addressing OCSLA lease sales, FB 19, 32-33, but these cases do not sanction what BOEM did here.  They simply recognize the principle—acknowledged by Appellants—that "staged development encourages staged consideration of uncertain environmental factors," AB 37 (quoting *Vill. of False Pass v. Clark*, 733 F.2d 605, 616 (9th Cir. 1984)), because at the lease sale stage there always will be uncertainty about the details of future exploration and development on the leases.

*See Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1192 (9th Cir. 1988) (upholding lease sale EIS methodology for analyzing oil spills as reasonable in light of limited information about future development); *False Pass*, 733 F.2d at 615 (upholding lease sale EIS despite failure to analyze a 100,000 barrel oil spill when it adequately analyzed a 10,000 barrel oil spill); *North Slope Borough v. Andrus*, 642 F.2d 589, 605 (D.C. Cir. 1980) (upholding lease sale EIS worst case oil spill analysis on grounds that it was reasonable in light of limited information about future development); *Suffolk County v. Sec'y of Interior*, 562 F.2d 1368, 1376-81 (2d Cir. 1977) (upholding lease sale EIS despite failure to assess development pipeline routes because of limited information about future development); *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 977 (9th Cir. 2006) (upholding onshore lease sale EIS despite failure to conduct a parcel-by-parcel analysis of effects because of limited information about future development). But Appellants do not fault BOEM for failing to address uncertainty about future projects on the leases or conduct a more site-specific analysis. Rather, BOEM's flaw here was its failure to address uncertainty about the very information (i.e., what areas are biologically significant and what would be the effects of oil activities in those areas) the agency used to develop and compare alternatives of the very decision (i.e., what areas to open for oil activities) it made at OCSLA's lease sale stage. The principle that an agency need not know

15

precisely what future exploration and development will look like at the lease sale stage does not excuse it from assessing pursuant to Section 1502.22 what information is essential to the lease sale stage decision itself. *See, e.g., Akutan*, 869 F.2d at 1192 n.1.

In defense of BOEM's two rationales for missing information about oil spills—that missing information is not essential because adverse effects are presumed significant or identical among all alternatives—Appellees argue that OCSLA's staged decision-making structure condones deferring a detailed analysis of oil spills until later stages. FB 37; CB 36. However, the EIS demonstrates that if BOEM obtained some of the missing information, it could potentially develop lease sale alternatives with fewer effects in the event of a spill. AB 45-47. The presumption of significant effects or identical effects among all alternatives thus improperly circumvents BOEM's obligation to compare and develop alternatives that "avoid or minimize adverse impacts" for the specific lease sale decision here. 40 C.F.R. § 1502.1. Federal Appellees' reliance on OCSLA staging to justify these rationales does not render them any less improper—nothing in OCSLA condones circumventing NEPA's alternatives mandate at the lease sale stage. *See False Pass*, 733 F.2d at 609 (NEPA analysis required at the lease sale stage); 43 U.S.C. § 1866(a) (OCSLA does not abrogate NEPA or other environmental laws).

16

Appellees argue that OCSLA's staged decision-making process justifies BOEM's reliance on future compliance with other environmental laws to conclude missing information is not essential. FB 36; CB 36-37. However, this Court long ago determined, *S. Or. Citizens Against Toxic Sprays, Inc. v. Clark*, 720 F.2d 1477, 1479-80 (9th Cir. 1983), and recently reaffirmed that an agency's reliance on later mitigation to avoid assessing baseline data for a decision "is inconsistent with what NEPA requires" because it "assumes that—regardless of what effects [the decision] may have on resources—there are mitigation measures that might counteract the effect without first understanding the extent of the problem." *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1084-85 (9th Cir. 2011). *Edwardsen v. U.S. Dep't of Interior*, the OCSLA case cited by Appellees to support their staging argument, does not displace and is fully consistent with this well-settled principle; as the Court there noted, although the EIS at issue incorporated later mitigation into its conclusions about air pollution effects, it did not avoid assessing the issue but contained "an extensive analysis" of air pollution data. 268 F.3d 781, 789 (9th Cir. 2001).

II. BOEM BASED THE SCENARIO THAT UNDERLIES ITS ASSESSMENT OF THE LEASE SALE'S EFFECTS ON AN ARBITRARY ASSUMPTION

Departing from past practice, AB 24-26, and out of a perceived need for speed, AB 26-27, BOEM based its forecast of activities that could occur as a result

17

of the lease sale, or "scenario," on an arbitrary assumption that oil development would occur only at the minimum possible level. AB 22-28. Because the EIS based its analysis of impacts entirely on the activity forecast in the scenario, BOEM's minimum-only assumption resulted in the EIS potentially understating effects of the lease sale, rendering the document misleading. AB 51-55. The assumption underlying BOEM's scenario is at odds with BOEM's own acknowledgments of the progression of development, should it occur, and fails to deal with the resource potential of the Chukchi Sea, a relevant factor in the decision. AB 23. As a result, the explanations BOEM provided in the EIS to justify the assumption do not offer "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted). *See also Akutan*, 869 F.2d at 1192 (agency must "provide[] a reasoned analysis of the evidence before" it); AB 48-51.[6]

As an initial matter, Appellees do not dispute three key points of Appellants' argument. First, they do not dispute that BOEM based its scenario in the EIS on the smallest amount of development that could occur, should the lease sale result in

---

[6] Appellants' argument is not, as Appellees suggest, FB 44, CB 41, that BOEM should have analyzed a larger scenario, but that it based the scenario on an arbitrary assumption. It is possible that BOEM could articulate a reasonable justification for the level of development it analyzed in the EIS, but it did not do so here.

18

any development at all.[7]  Second, they do not dispute that BOEM in the EIS

concluded that, once an initial field is developed, it is likely that development will

expand out from that field.  AB 24.  Third, they do not dispute the central

importance of the scenario to the impacts analysis in the EIS—the degree of impact

to the environment described in the EIS, from disturbance to catastrophic oil spills,

is entirely based on the assumed level and type of activity set forth in the scenario.

Thus, the only dispute is whether it was reasonable in light of the record for

BOEM to base the scenario on an assumption that oil development would occur as

a result of the lease sale only at the minimum possible level.  Appellees offer

several defenses on this point, but they amount to mischaracterizations of

Appellants' argument or recitations of the same flawed justifications for the

scenario that BOEM offered in the EIS.

Emphasizing the discretion owed to an agency's predictive judgments and

the hypothetical nature of the scenario, Appellees suggest that Appellants

challenge the methodology BOEM used to develop its scenario.  FB 44, 46-47; CB

42-44.  However, Appellants' claim is not that BOEM used the wrong method or

could have used a better method, but that BOEM predicated the method it used to

analyze impacts—the scenario—on an arbitrary assumption and as a result

---

[7] Appellees take issue with the characterization of a one billion barrel oil field
development as "minimum," preferring to characterize it as "large," FB 44, CB 44,
but this editorial suggestion does not change the fact that BOEM based its scenario
on the smallest field it determined could support development from the lease sale.

19

understated the potential effects of the lease sale. AB 48-51.[8] An agency's analysis of potential effects from oil and gas activities resulting from a lease sale must be reasonable, *Akutan*, 869 F.2d at 1192, and BOEM's analysis here fails that test. There is no reasoned explanation in the record justifying BOEM's decision to analyze only the minimum level of development, if development occurs, in light of the progression of development—expanding out from an initial field—that BOEM otherwise predicts and the much larger level of economically recoverable resources BOEM acknowledges is a relevant factor for the forecast, AB 48-51.[9]

The Appellees' remaining defenses of the scenario consist of attempts to describe BOEM's rationales for basing the scenario on a minimum-only assumption. But the briefs only repeat the flawed rationales BOEM put forward in the EIS itself. *See* FB 43 & CB 41-42, 44 (scenario is reasonable because the most likely level of development from the lease sale is no development at all and marginal fields are unlikely to be developed); FB 42, 44 & CB 44 (scenario is

---

[8] Federal Appellees additionally suggest Appellants fault BOEM for departing from its past approaches to developing scenarios, FB 45-46, but Appellants cite them only to illustrate the arbitrary nature of the choices BOEM made here to base the scenario on minimum-only development, untethered from predicted development patterns and resource estimates.

[9] Company Appellees' reliance on *N. Alaska Envtl. Ctr.*, CB 43 n.22, is similarly misplaced. The Court there addressed a challenge to the level of detail of the analysis of exploration and development in an EIS for an onshore lease sale. 457 F.3d at 975-77. Appellants' claim here is that the analysis in this EIS was based on an arbitrary assumption, not that it lacked adequate detail or employed a faulty method.

reasonable because the Chukchi Sea lacks infrastructure); FB 42-43 & CB 45 (scenario is reasonable because it is unlikely that the lease sale will result in development of the full resource potential of the Chukchi Sea). However, none of these explanations justifies the minimum-only assumption underlying the scenario. *See* AB 50-51 (addressing low likelihood rationale), 49-50 (addressing rationale that the Chukchi is remote and lacks infrastructure), 50 (addressing rationale that full economic resource potential is unlikely to be developed).

III.    THE COURT SHOULD VACATE THE AGENCY DECISION, OR IN THE ALTERNATIVE, ENJOIN ACTIVITIES UNDER THE LEASES, AND REMAND FOR COMPLIANCE WITH NEPA

Appellees do not dispute that the normal remedy under the APA for an unlawful agency action is to set aside the action and remand to the agency. FB 47-48; CB 47-48; AB 55-56. *See also Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184-85 (9th Cir. 2011) (emphasizing this Court has "set[] aside agency action pending NEPA compliance on numerous occasions," because if it could not stop agencies from acting pursuant to administrative decisions made "without adherence to required procedures, regardless of the equities, both NEPA and the

21

APA would be toothless").[10]  Of course, as Appellants note, the Court may remand without vacating in extraordinary circumstances, when, for example, vacatur would cause environmental harms or thwart the purposes of the statute at issue. AB 56.  Appellees cite *California Communities Against Toxics v. EPA*, FB 47-48; CB 47-48, but that case does not change the rule that vacatur is the normal remedy absent extraordinary circumstances.  688 F.3d 989, 993-94 (9th Cir. 2012) (noting vacatur, denied in that case, would result in the "use of diesel generators that pollute the air, the very danger the Clean Air Act aims to prevent").[11]

Federal Appellees suggest that extraordinary circumstances warrant departure from vacatur here because BOEM would have to refund the lease bids and rental funds it collected pursuant to the lease sale, FB 48, but the mere fact that

---

[10] Appellees repeatedly conflate their arguments against injunctive relief and vacatur, FB 48-49; CB 50-52, but these remedies are different and are subject to distinct requirements.  *See Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095-96 (9th Cir. 2011) (vacatur is appropriate remedy for APA violations); *Sierra Forest Legacy*, 646 F.3d at 1184 (outlining four-factor test for injunctive relief).  *See also Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2761 (2010) (discussing differences of vacatur and injunction).

[11] The other cases cited by the Company Appellees, CB 48, are also consistent with the Ninth Circuit's vacatur rule.  *Idaho Farm Bureau v. Babbit* states that "[o]rdinarily" when an agency action fails to comply with the APA, the action is "invalid."  58 F.3d 1392, 1405 (9th Cir. 1995).  In *Pit River Tribe v. U.S. Forest Serv.*, although it left in place earlier, unchallenged leases, this Court ordered that the lease extensions at issue "must be undone" due to NEPA violations.  615 F.3d. 1069, 1078, 1083-84 (9th Cir. 2010).

money has changed hands is not sufficient to warrant remand without vacatur.[12]

*See, e.g., Woods Petroleum Corp. v. U.S. Dept. of Interior*, 18 F.3d 854, 859-60

(10th Cir. 1994) *adhered to on reh'g*, 47 F.3d 1032, 1041 (10th Cir. 1995) (en

banc) (voiding leases and directing return of funds involved with the voided

leases); *MCI Telecommunications Corp. v. FCC*, 59 F.3d 1407, 1420 (D.C. Cir.

1995) (vacating portion of rule and remanding to agency to recalculate damages

erroneously assessed under vacated rule).  Nor, as Federal Appellees argue, FB 48-

49, would vacatur thwart the objectives of the statute here.  The governing statute

in this action is NEPA, and even OCSLA requires development to be "subject to

environmental safeguards."  43 U.S.C. § 1332(3).  *See also Sec'y of the Interior v.

Cal.*, 464 U.S. 312, 338 (1984) (requiring NEPA compliance at lease sale stage);

43 U.S.C. § 1346(a)(1) (requiring study of environmental impacts in lease sale

area).

Appellees suggest the agency errors are "technical deficiencies," FB 49, or

"narrow," CB 47, 54, but, to the contrary, BOEM's errors here could not be more

fundamental.  They go to the "heart" of the agency's duties under NEPA, 40

C.F.R. § 1502.14, and, if remedied, the agency may well reach an entirely different

decision regarding the lease sale.  The Company Appellees cite a D.C. Circuit case,

---

[12] The Company Appellees claim that economic harm will result from either
vacatur or injunctive relief, CB 52, but to the extent that such harm is relevant to
the Ninth Circuit's rule on vacatur, it is not an extraordinary circumstance
warranting remand without vacatur.  *See also infra* at 27.

*Radio-Television News Dirs. Ass'n v. FCC*, CB 48, for the proposition that if "there is at least a serious possibility that the [agency] will be able to substantiate its decision given an opportunity to do so" vacatur may not be appropriate. 184 F.3d 872, 888 (D.C. Cir. 1999). However, even were this Court to adopt this principle, it would not apply here, where the agency has had multiple chances to substantiate its decision, and still fails to do so. *See In re Core Communications, Inc.*, 531 F.3d 849, 861 (D.C. Cir. 2008) ("Having repeatedly, and mistakenly, put our faith in the [agency], we will not do so again."). Finally, the Company Appellees suggest vacatur is inappropriate because the Secretary is committed to this sale. CB 46, 51-52. But beyond the evidence that the existing leases skewed the remand decision, *see infra* at 24-25, the Secretary's recent independent decision about future leasing in the Arctic Ocean is in fact significantly different— it is tied to filling science gaps and a more targeted lease approach. *See* BOEM, Proposed Final Outer Continental Oil & Gas Leasing 2012-2017 at 3, 6-7 (June 2012), *available at* http://www.boem.gov/uploadedFiles/BOEM/Oil_and_Gas_ Energy_Program/Leasing/Five_Year_Program/2012-2017_Five_Year_Program /PFP%2012-17.pdf.

Contrary to Appellees' suggestions, then, no extraordinary circumstances exist here warranting a departure from the normal remedy. Indeed, vacatur is particularly appropriate here, because the record demonstrates that absent vacatur,

24

the existence of outstanding leases factored significantly into BOEM's remand

reconsideration of the lease sale decision, thwarting the purposes of NEPA. *See*

AB 56-57; 40 C.F.R. § 1502.2(g) (EIS serves to assess environmental impacts of

proposed actions, not to justify decisions already made). *See also Natural Res.*

*Def. Council v. Houston*, 146 F.3d 1118, 1129 (9th Cir. 1998) (affirming rescission

of contracts because "[w]here contracts have already been entered into, the

opportunity to 'choose' has been eliminated—all that remains is the limited ability

to make the path chosen as palatable as possible").

Alternatively, Appellants are entitled to an injunction prohibiting further

activity under the leases pending the agency's compliance with its NEPA

obligations. Appellees' objections to the contrary are flawed for three reasons.

First, Company Appellees do not directly dispute the factual sufficiency of

Appellants' arguments regarding harm, but instead suggest Appellants asked the

Court to presume irreparable injury in this case. *See* CB 49-50. This is incorrect.

Appellants argued that harm from these activities is "sufficiently likely," *Amoco*

*Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987), based largely on BOEM's

own EIS and evidence of injury to Appellants' use of the Chukchi Sea. *See* AB 58;

25

*see also* V-ER-950-53 (detailing "unavoidable adverse effects" resulting from

lease sale).[13]

Second, Federal Appellees argue that OCSLA's policy weighs against

injunctive relief, FB 48-49; *see also* CB 54-55 & n.28, but nothing in OCSLA

displaces or limits the remedy of an injunction. *See Mass. v Watt*, 716 F.2d 946,

953 (1st Cir. 1983) (issuing preliminary injunction of OCSLA lease sale

challenged pursuant to NEPA); *Alaska Wilderness League v. Kempthorne*, Nos.

07-71457, 07-71989, & 07-72183, Dkt. Entry 48 (9th Cir. Aug. 15, 2007), *reh'g*

*denied* Dkt. Entry 58 (9th Cir. Sept. 13, 2007) (issuing preliminary injunction of

OCSLA exploration plan challenged pursuant to NEPA).[14]

---

[13] Appellees' argument that the only potential for harm is in the development and
production phase is belied by the EIS, which details harms that occur as early as
the exploration phase. *See* AB 58. In none of the cases cited by Appellees
regarding other approvals connected to these activities, FB 49-50; CB 53-54, did
this Court address the issue of irreparable harm. That future activities are subject
to approval does not negate the fact that they are predicated on the existence of the
leases issued pursuant to the lease sale. *See Mass. v. Watt*, 716 F.2d 946, 952-53
(1st Cir. 1983) (rejecting the "government's view … that the lease sale alone
cannot hurt the environment"). Because lease sale activities are sufficiently likely
to cause irreparable harm, the Court may enjoin them.

[14] Additionally, the cases Appellees cite, FB 49, CB 54-55 & n.28, do not stand for
the proposition that OCSLA's policy always weighs against injunctions; rather,
they represent applications of the multi-pronged injunction test where the party
seeking the injunction failed to demonstrate likelihood of injury. *See Tribal Vill. of*
*Akutan v. Hodel*, 859 F.2d 662, 664 (9th Cir. 1988) (lifting injunction because
appellees won on merits and activities would result in no harm to environment);
*Amoco Prod. Co.*, 480 U.S. at 545 (reversing injunction where alleged injury was
"not at all probable").

Third, the Company Appellees' assertion of economic harm, CB 52, 54, does not justify denial of injunctive relief. Economic harm normally is a reparable injury, *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), and the Court must give more weight to irreparable harm. *See, e.g., Idaho Sporting Congress Inc. v. Alexander*, 222 F.3d 562, 569 (9th Cir. 2000). The Company Appellees have made no showing that they would be left without a remedy against the government in the face of an injunction. *See, e.g., Amber Res. Co. v. U.S.*, 538 F.3d 1358, 1362 (Fed. Cir. 2008). Furthermore, many of the alleged harms result from calculated business risks with no certainty of payoff, such as research and surveying conducted prior to the lease sale, II-SER-414-15 ¶ 9; CSER-4-6 ¶¶ 9-14, and actions taken with full knowledge that the lease sale was being litigated, II-SER-210-211 ¶¶ 3-4, CB 3 (lease sale held after complaint filed). *See Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001), *abrogated on other grounds by Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008). Although Federal Appellees and the State make generalized assertions regarding economic benefits from the oil and gas industry, they also concede that the lease sale, itself, does not guarantee development and production from which the alleged benefits flow. *See* FB 49; State of Alaska's Brief 10.

For the foregoing reasons, Appellants are entitled to injunctive relief in this case given BOEM's failure to comply with NEPA, the irreparable harm to the environment and Appellants' interests, the balance of harms, and the public interest.

Respectfully submitted this 1st day of October, 2012,

*s/ Erik Grafe*

Erik Grafe
Eric P. Jorgensen
EARTHJUSTICE

*Attorneys for Plaintiffs-Appellants Native Village of Point Hope, et al.*

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(a)(7)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,890 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

Respectfully submitted this 1st day of October, 2012,

*s/ Erik Grafe*

Erik Grafe
EARTHJUSTICE

*Attorney for Plaintiffs-Appellants Native Village of Point Hope, et al.*

29

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically filed the foregoing APPELLANTS' REPLY BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I also certify that on October 1, 2012, four (4) copies of APPELLANTS' FURTHER EXCERPTS OF RECORD were sent by Priority Mail to the Clerk of the Court, U.S. Court of Appeals for the Ninth Circuit, P.O. Box 193939, 95 Seventh Street, San Francisco, CA 94119-3939. One (1) copy was served by Priority Mail on each of the following:

David C. Shilton
U.S. Department of Justice
ENRD – Appellate Section
P.O. Box 7415
Washington, DC 20044

Kyle W. Parker
Crowell & Moring, LLP
1029 W. Third Avenue, Suite 402
Anchorage, AK 99501

Jeffrey Leppo
Ryan Steen
Stoel Rives LLP
600 University Street, Suite 300
Seattle, WA 98101

Rebecca Kruse
Kenneth Diemer
State of Alaska
1031 W. Fourth Avenue, Suite 200
Anchorage, AK 99501

James N. Leik
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, AK 99501

30

Respectfully submitted this 1st day of October, 2012,

*s/ Erik Grafe*

Erik Grafe
EARTHJUSTICE

*Attorney for Plaintiffs-Appellants Native Village of Point Hope, et al.*

31

**[Colored Page in Printed Brief]**

ADDENDUM

Except for the following, all applicable statutes, etc., are contained in the
addendum to Appellants' Opening Brief

| STATUTES | Page(s) |
|---|---|
| 43 U.S.C. § 1346(a)(1) | A1 |
| 43 U.S.C. § 1866(a) | A1 |

| ORDERS | |
|---|---|
| Order, *Alaska Wilderness League, et al. v. Kempthorne, et al.*, Nos. 07-71457, 07-71989, and 07-72183 (9th Cir. Aug. 15, 2007) | A3-A5 |
| Order, *Alaska Wilderness League, et al. v. Kempthorne, et al.*, Nos. 07-71457, 07-71989, and 07-72183 (9th Cir. Sept. 13, 2007) | A6-A7 |

## 43 U.S.C.A. § 1346

### § 1346. Environmental studies

(a) Information for assessment and management of impacts on environment; time for study; impacts on marine biota from pollution or large spills

(1) The Secretary shall conduct a study of any area or region included in any oil and gas lease sale or other lease in order to establish information needed for assessment and management of environmental impacts on the human, marine, and coastal environments of the outer Continental Shelf and the coastal areas which may be affected by oil and gas or other mineral development in such area or region.

. . .

**A1**

**43 U.S.C.A. § 1866**

**§ 1866. Relationship to existing law**

(a) Except as otherwise expressly provided in this chapter, nothing in this chapter shall be construed to amend, modify, or repeal any provision of the Coastal Zone Management Act of 1972 [16 U.S.C.A. § 1451 et seq.], the National Environmental Policy Act of 1969 [42 U.S.C.A. § 4321 et seq.], the Mining and Mineral Policy Act of 1970 [30 U.S.C.A. § 21a], or any other Act.

. . .

**A2**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 15 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALASKA WILDERNESS LEAGUE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; PACIFIC ENVIRONMENT AND RESOURCES CENTER, | No. 07-71457 |

Petitioners,

v.

DIRK KEMPTHORNE, et al.,

Respondent,

SHELL OFFSHORE, INC.,

Respondent - Intervenor.

| | |
|---|---|
| RESISTING ENVIRONMENTAL DESTRUCTION ON INDIGENOUS LANDS, A PROJECT OF THE INDIGENOUS ENVIRONMENTAL NETWORK; CENTER FOR BIOLOGICAL DIVERSITY AND SIERRA CLUB, | No. 07-71989 |

Petitioner,

v.

DIRK KEMPTHORNE, et al.,

A3

08-15-2007  11:54am  From-9th CIR.                                              T-371  P.003/004  F-298

Respondent,

SHELL OFFSHORE, INC.,

Respondent - Intervenor.

---

| | |
|---|---|
| NORTH SLOPE BOROUGH; ALASKA ESKIMO WHALING COMMISSION, | No. 07-72183 |
| Petitioners, | DOI No. 2007-152 |
| v. | |
| DIRK KEMPTHORNE, et al., | ORDER |
| Respondent, | |
| SHELL OFFSHORE, INC., | |
| Respondent - Intervenor. | |

Before: SCHROEDER, Chief Judge, HAWKINS and WARDLAW, Circuit Judges.

Petitioners in these consolidated petitions for review have (1) shown a probability of success on the merits, combined with the possibility of irreparable harm if relief is denied, and (2) raised serious questions and demonstrated that the balance of hardships tips sharply in their favor. *See Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1297 (9th Cir. 2003); *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.), *rev'd in part on other grounds*, 463 U.S. 1328 (1983). Therefore, the

2

**A4**

urgent motions to stay the Minerals Management Service's February 15, 2007, approval of Shell Offshore's Beaufort Sea Outer Continental Shelf Lease Exploration Plan are GRANTED pending resolution of these consolidated petitions for review.

The court *sua sponte* expedites the briefing schedule. Petitioners' opening briefs are due September 5, 2007. Respondent's answering brief is due October 5, 2007. Respondent-intervenors' brief is due October 19, 2007. Petitioner's optional reply brief is due on November 5, 2007 by 3:30 pm in the Clerk's office.

The provisions of Ninth Circuit Rule 31-2.2(a) shall not apply to this petition. The parties are reminded of the court's preference for joint briefing. *See* 9th Cir. R. 28-4.

The Clerk shall calendar this case with the first available panel during the week of December 3, 2007 through December 7, 2007.

**SO ORDERED.**

3

**A5**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 13 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALASKA WILDERNESS LEAGUE; et al., | No. 07-71457 |
| Petitioners, | |
| v. | |
| DIRK KEMPTHORNE, et al., | |
| Respondent, | |
| SHELL OFFSHORE, INC., | |
| Respondent - Intervenor. | |

| | |
|---|---|
| RESISTING ENVIRONMENTAL DESTRUCTION ON INDIGENOUS LANDS, A PROJECT OF THE INDIGENOUS ENVIRONMENTAL NETWORK; et al., | No. 07-71989 |
| Petitioner, | |
| v. | |
| DIRK KEMPTHORNE, et al., | |
| Respondent, | |
| SHELL OFFSHORE, INC., | |
| Respondent - Intervenor. | |

**A6**

NORTH SLOPE BOROUGH; et al.,

        Petitioners,

    v.

DIRK KEMPTHORNE, et al.,

        Respondent,

SHELL OFFSHORE, INC.,

        Respondent - Intervenor.

No. 07-72183

DOI No. 2007-152

ORDER

Before: SCHROEDER, Chief Judge, HAWKINS, and WARDLAW, Circuit Judges.

The panel has unanimously voted to deny the petition for panel rehearing and the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

2

**A7**